Jason Chuan (SBN 261868)
Mary M. Sun (SBN 288903)
Law Office of Mary Sun
317 E. Foothill Blvd., Ste. 203
Arcadia, CA 91006
Phone:  626-616-6526
Fax:      626-303-7882
Email:  mary@sunlegalgroup.com

Attorneys for Plaintiff,
Shoumin Zhang

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHOUMIN ZHANG, an individual, ) | Case No.: |
| ) | |
| Plaintiff, ) | **COMPLAINT FOR:** |
| ) | |
| vs. ) | |
| ) | **1. FRAUD** |
| AMERICAN FRANCHISE ) | **2. BREACH OF CONTRACT** |
| REGIONAL CENTER, LLC, a ) | **3. BREACH OF IMPLIED** |
| California limited liability company, ) | **COVENANT OF GOOD FAITH** |
| AMERICANA ONE, LLC, a ) | **AND FAIR DEALING** |
| California limited liability company, ) | **4. CONVERSION** |
| EMAX ESCROW, INC., a California ) | **5. UNAUTHORIZED PRACTICE** |
| corporation, JOHN DEYONG HU, an ) | **OF LAW** |
| individual, ) | **6. BREACH OF FIDUCIARY** |
| ) | **DUTY** |
| Defendants. ) | **7. UNFAIR BUSINESS** |
| ) | **PRACTICES** |
| ) | **8. DELIVERY OF DEPOSIT** |
| ) | |
| ) | |
| ) | |
| ) | |

Plaintiff Shoumin Zhang alleges as follows:

## INTRODUCTION

1.      This action arises from Defendants, American Franchise Regional Center, LLC and Americana One, LLC fraudulently inducing Plaintiff Shoumin Zhang to invest $500,000 into a business with the promise of obtaining an immigration visa.

## PARTIES

2.      Plaintiff, Shoumin Zhang, is an individual who at all times relevant herein was, a citizen or permanent resident of China, who resided in and was domiciled in China.

3.      Defendant, American Franchise Regional Center, LLC ("AFRC"), is a California limited liability company with its principal place of business in the City of Arcadia, California.

4.      Defendant, Americana One, LLC ("Americana One"), is a California limited liability company with its principal place of business in the City of Arcadia, California.

5.      Defendant, EMax Escrow, Inc. ("Emax") is a California corporation with its principal place of business in the City of Alhambra, California.

6. Plaintiff is informed and believes, and thereon alleges, that Defendant, John Deyong Hu ("Hu"), is an individual who at all times relevant herein was, a citizen or permanent resident of the United States, who resided in and was domiciled in California.

7. Defendants AFRC and Americana One are collectively referred to as the "Regional Center".

## JURISDICTION AND VENUE

8. This action is properly before this Court as Plaintiff's claims arose in Los Angeles County, California. This Court has jurisdiction over the subject matter of the claims under 28 U.S.C. § 1332 since the matter in controversy exceeds the value of $75,000, exclusive of interest and costs, and is between citizens of California and a citizen of China who is domiciled in China.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) since all of the Defendants reside in this District. AFRC and Americana One are California limited liability companies with their principal place of business in Los Angeles County, California, and Emax is a California corporation with its principal place of business in Los Angeles County, California. Plaintiff is informed and believes, and thereon alleges, that Hu is an individual who is domiciled in or resides in Los Angeles, County, California. Venue is also

proper pursuant to 28 U.S.C. § 1391(b)(2) as Plaintiff's claims arose in Los Angeles County, California.

## FACTS

### Plaintiff Invests $500,000 with the Regional Center for an Investor's Immigrant Visa

10.     Plaintiff is a Chinese national who intended to immigrate to the United States.

11.     In or around February 2014, Plaintiff searched online for projects that she could invest in to qualify for an immigration visa and discovered a website run by the law firm Hu & Associates, Inc. (the "Hu Law Firm"), which was acting as a finder for the Regional Center.  Plaintiff requested further information from the Hu Law Firm regarding investment opportunities.

12.     In or around February 2014, Hu responded to Plaintiff's inquiry via e-mail, representing to Plaintiff that the Regional Center had a project to renovate a commercial building in Tustin, California into a new business entity that would qualify foreign investors to obtain an immigration visa from the United States government (the "Tustin Project").  Hu's e-mail included a set of documents claiming that the Tustin Project was guaranteed by the property which housed the project, and that the property was worth approximately $8,000,000. In addition, there would be a guaranteed rate of return on any investment.

13.     To facilitate the visa application process, Plaintiff also employed the services of the Hu Law Firm on or about May 19, 2014 regarding the petition for an EB5 investor immigrant visa.

14.     On or about May 21, 2014, Plaintiff and Defendants entered into a written agreement (the "Subscription Agreement"), wherein Plaintiff agreed to purchase a limited liability company membership unit ("Unit") in Americana One for $500,000, in order to qualify for a EB-5 visa.   The Subscription Agreement provided that Plaintiff could recover her money if her I-526 immigrant petition was not approved.   A true and correct copy of the Subscription Agreement is attached hereto as **Exhibit A**.

15.     Pursuant to the Subscription Agreement, Plaintiff selected the escrow option of payment.  Plaintiff then placed $500,000 in escrow with Emax Escrow, Inc. ("Emax") and filed a I-526 immigrant petition.

16.     During this process, Hu acted as Plaintiff's attorney with respect to the various agreements that the Regional Center had Plaintiff sign, including the Subscription Agreement.

**Plaintiff Discovers that The Claimed Value of the Investment is False**

17.     Subsequently, Plaintiff discovered that the value of the investment as claimed in the February 2014 package was false, and that the investment

property was not valued at approximately $8,000,000.  As such, Plaintiff sought the return of her money and the termination of the I-526 application process.

**Plaintiff Demands the Return of her Money**

18.    The Subscription Agreement provides that if Plaintiff's I-526 application was denied and Plaintiff requested the return of her funds, Emax would return her funds as set forth in the Escrow Agreement.  A true and correct copy of the Escrow Agreement is attached hereto as **Exhibit B**.

19.    Section 3 of the Escrow Agreement provides that Emax was to release the funds to Plaintiff within two (2) business days after Emax's receipt of written notice from Americana One that (i) the I-526 petition was denied and (ii) Plaintiff wishes a refund of the funds.

**Hu and the Regional Center Refuse to Return Plaintiff's Money**

20.    In or around May 2015, Plaintiff visited the United States and spoke with Hu, along with the managing member of the Regional Center, Agnes Yen ("Yen"), in person at the Regional Center's office in Arcadia. During the meeting, Plaintiff requested that the Regional Center return her money.  Though the Subscription Agreement expressly provides that Plaintiff was entitled to a refund, Hu and Yen represented to Plaintiff that the contracts did not allow Plaintiff to obtain a refund.

**Plaintiff Takes Steps to Obtain a Refund of Her Money**

21.    On or about June 11, 2015, the United States Citizenship and Immigration Services terminated Plaintiff's I-526 petition.

22.    On July 6, 2015, Plaintiff notified both AFRC and Americana One that the I-526 petition was terminated, that she withdrew her subscription, and wished for a refund of her funds.  Accordingly, Plaintiff demanded that AFRC and Americana One provide EMax with written notice of the denial and her refund.

23.    Since the Regional Center failed to respond to Plaintiff's July 6 notification, Plaintiff sent the Regional Center another demand to return Plaintiff's funds on September 16, 2015.  Plaintiff did not receive a response to her September 16 demand.

24.    On or about October 2, 2015, Plaintiff sent the Regional Center a demand for arbitration and the return of her funds, via overnight express mail. Since the Regional Center failed to accept the mailing after three attempts, it was returned to Plaintiff.

25.    On or about October 19, 2015, Plaintiff attempted to contact Emax and determine whether Emax still held Plaintiff's funds in escrow, and whether the Regional Center had instructed Emax to return Plaintiff's funds.  Emax did not respond to Plaintiff's inquiries.

26.     On or about November 5, 2015, Plaintiff personally served the Regional Center with another demand for arbitration, requesting that the Regional Center respond by November 15, 2015.

27.     On or about November 15, 2015, the Regional Center informed Plaintiff that it would not refund her money because the Hu Law Group had informed the Regional Center of a claim that Plaintiff owed the Hu Law Group legal fees, even though the Subscription Agreement does not permit Americana One to withhold any refund for such a reason.

28.     On or about November 18, 2015, Emax attempted to resign pursuant to paragraph 8 of the Escrow Agreement, which provides that if Emax were to resign, the funds were to be delivered to a designated successor escrow agent.  In the event that Emax did not receive joint written instructions from both Americana One and Plaintiff within thirty (30) days, the funds would be distributed to Americana One.

29.     On or about December 10, 2015, Plaintiff notified Emax that its attempt to withdraw was improperly served since it was served via e-mail and the Escrow Agreement does not allow for that manner of notice, and again requested that Emax provide information regarding the status of Plaintiff's funds.  Emax, however, refused to provide any information to Plaintiff's counsel.

30. On December 11, 2015, Plaintiff again requested that Emax provide Plaintiff with information regarding her funds. Emax again failed to respond.

31. As of today, Defendants have failed to return Plaintiff's $500,000.

**FIRST CLAIM FOR RELIEF**
**INTENTIONAL MISREPRESENTATION**
**Against all Defendants**

32. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 31, inclusive, of this Complaint as if fully set forth herein.

33. In or around February 2014, Hu, acting as the Regional Center's agent, represented to Plaintiff via e-mail that it had a safe investment guaranteed with a property worth approximately $8,000,000, and that she would get a guaranteed rate of return if Plaintiff invested money with the Regional Center.

34. Hu and the Regional Center's statements were false and/or misleading. The property in Tustin was not worth approximately $8,000,000. In addition, the Regional Center could not possibly have provided Plaintiff with a guaranteed rate of return.

35. Plaintiff is informed and believes, and on that basis alleges, that Hu and the Regional Center knew that the representations were false when

made, and made the representations recklessly and without regard for their truth.

36.     Plaintiff is informed and believes, and on that basis alleges, that Hu and the Regional Center intended that Plaintiff rely upon their representations.

37.     Plaintiff is a foreign national with little knowledge of United States laws and business practices.  Hu was an attorney purporting to be capable of helping Plaintiff through the immigration process.  Thus, Plaintiff reasonably relied upon Hu and the Regional Center's representations in deciding to invest money into the Tustin Project.

38.     As a result of Hu and the Regional Center's actions, Plaintiff suffered harm in the loss of at least $500,000.

39.     But for Hu and the Regional Center's representations, Plaintiff would not have invested money into the Tustin Project.  Therefore, Plaintiff's reliance upon Hu and the Regional Center's representations was a substantial factor in causing her harm.

40.     Plaintiff is informed and believes, and on that basis alleges, that Emax is further responsible for the harm to Plaintiff because it was also part of the conspiracy to defraud Plaintiff.

41.     Plaintiff is informed and believes, and on that basis alleges, that the Regional Center and Emax had an agreement to assist each other in defrauding investors.  The Regional Center was the one who selected Emax as the escrow agent.  The Escrow Agreement provides that Emax had the right to unilaterally resign as the escrow agent, and that the funds would automatically be disbursed to Americana One if Emax did not receive joint written instructions from Americana One and Plaintiff regarding a successor escrow agent, within thirty (30) calendar days.  Plaintiff is informed and believes, and on that basis alleges, that Emax included this provision in the Escrow Agreement so that Americana One had the option of unilaterally refusing to issue any such written instructions and obtaining the escrow funds without Plaintiff's consent.

42.     Plaintiff is informed and believes, and on that basis alleges, that Emax has been aware of the Regional Center's plans to defraud Plaintiff, and agreed with the Regional Center and intended for Plaintiff to be defrauded.  In fact, Emax has made Plaintiff's attempts to recover her funds more difficult by repeatedly ignoring Plaintiff's requests for information regarding the status of her funds.

43.    As a proximate and direct result of Hu, AFRC, Americana One, and Emax's acts as herein alleged, Plaintiff has sustained damages in an amount to be proven at trial.

44.    AFRC, Americana One, and Emax are directly, contributorily and/or vicariously liable for these actions.

**SECOND CLAIM**
**BREACH OF CONTRACT**
**Against Americana One**

45.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 44, inclusive, of this Complaint as if fully set forth herein.

46.    Plaintiff and Americana One entered into a written Subscription Agreement on or about May 21, 2014, wherein Plaintiff would deposit $500,000 in escrow in exchange for an ownership interest in Americana One.

47.    The Subscription Agreement further provides that if Plaintiff's I-526 petition is denied, and Plaintiff requests a return of her funds, the escrow agent should return the $500,000 to Plaintiff.

48.    Plaintiff deposited $500,000 into escrow with Emax pursuant to the Subscription Agreement.

49.    Plaintiff's I-526 petition was later denied.   Plaintiff informed AFRC and Americana One of this denial and repeatedly requested that they instruct Emax to return her funds to her.

50.     Americana One has breached the Subscription Agreement by refusing to instruct Emax to return the funds to Plaintiff.

51.     As a result of Americana One's breach, Plaintiff has suffered harm by being deprived of her $500,000.

### THIRD CLAIM
### BREACH OF CONVENANT OF GOOD FAITH AND FAIR DEALING
### Against Americana One

52.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 51, inclusive, of this Complaint as if fully set forth herein.

53.     There is a covenant of good faith and fair dealing which requires that neither party will do anything that injures the right of the other to receive the benefits of the Subscription Agreement.

54.     Plaintiff fully performed under the Subscription Agreement.

55.     By entering into the course of conduct alleged herein, Americana One breached the implied covenant of good faith and fair dealing, thereby depriving Plaintiff of the right to receive the benefits of the Subscription Agreement, by refusing to instruct Emax to refund Plaintiff's money.

56.     AFRC is further responsible for the harm to Plaintiff because it was also part of the conspiracy to defraud Plaintiff, and aided and abetted Americana One by making representations to Plaintiff regarding the Tustin Project.

57.     As a proximate and direct result of AFRC and Americana One's acts as herein alleged, Plaintiff has sustained damages in an amount to be proven at trial.

## FOURTH CLAIM
## CONVERSION
### Against All Defendants

58.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 57, inclusive, of this Complaint as if fully set forth herein.

59.     Plaintiff owned and possessed $500,000.

60.     Defendants interfered with Plaintiff's ownership and possession of the $500,000 by refusing to return the $500,000 after Plaintiff demanded its return.   Hu also instructed the Regional Center not to return the funds until Plaintiff resolved a fee dispute with him.

61.     Plaintiff did not consent to Defendants' refusal to return the funds.

62.     As a proximate and direct result of Defendants' acts as herein alleged, Plaintiff has sustained damages of at least $500,000, in an amount to be proven at trial.

63.     Hu, AFRC, Americana One, and Emax are directly, contributorily and/or vicariously liable for these actions.

**FIFTH CLAIM**
**UNAUTHORIZED PRACTICE OF LAW**
**Against Defendant Hu**
**(Under Bus. & Prof. Code § 6125 et seq.)**

64.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 63, inclusive, of this Complaint as if fully set forth herein.

65.    No person shall practice law in California unless the person is an active member of the State Bar.

66.    The Hu Law Firm maintains an office in California.  Hu provided Plaintiff with advice regarding various agreements for the Tustin Project, including the Subscription Agreement, which involved a California company and investment of funds into a project in California.

67.    Hu also represented Plaintiff with respect to her efforts to obtain a refund.  When Plaintiff traveled to the United States to demand a refund from the Regional Center, Hu asked Plaintiff for approximately $2,000 to represent her during the visit.  Plaintiff paid Hu the amount requested, and they went together to visit the Regional Center's offices in Arcadia.  Hu provided Plaintiff with legal advice during the meeting between Hu, Yen, and Plaintiff regarding the refund of Plaintiff's money.

68.    Hu is not an active member of the State Bar of California.  Instead, he is an active member of the State Bar of New York.

69.     As a proximate and direct result of Hu's unauthorized practice of law, Plaintiff entered into the Subscription Agreement with Americana One and deposited $500,000 into escrow.  Thus, Plaintiff has sustained damages of at least $500,000, in an amount to be proven at trial.

70.     Plaintiff also paid Hu $2,000 to represent her at the meeting in Arcadia as her legal counsel, when he had no legal right to do so.

## SIXTH CLAIM
## BREACH OF FIDUCIARY DUTY
### Against Defendant Hu

71.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 70, inclusive, of this Complaint as if fully set forth herein.

72.     Hu owed a fiduciary duty of loyalty to Plaintiff as her attorney.

73.     Plaintiff is informed and believes, and thereon alleges, that Hu maintained a business or financial relationship with the Regional Center during the time he represented Plaintiff as her attorney.

74.     Hu breached the duty of loyalty by simultaneously representing or working with the Regional Center, and failing to obtain Plaintiff's informed written consent to such simultaneous representation.

75.     Plaintiff is informed and believes, and thereon alleges, that Hu also breached the duty of loyalty by placing the Regional Center's interests above Plaintiff's.

76. As a direct and proximate result of this simultaneous representation and breach of duty, Plaintiff suffered damages in an amount to be determined at trial.

## SEVENTH CLAIM
## UNFAIR BUSINESS PRACTICES
## (UNDER BUS. & PROF. CODE § 17200 ET SEQ)
## Against All Defendants

77. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 76, inclusive, of this Complaint as if fully set forth herein.

78. Plaintiff is informed and believes, and on that basis alleges, that Defendants' aforesaid acts constitute actionable wrongs under California Bus. & Prof. Code § 17200 et seq. in that the Regional Center defrauded Plaintiff during the course of its business. Plaintiff is further informed and believes, and on that basis alleges, that Emax aided and abetted the Regional Center in defrauding Plaintiff.

79. Plaintiff is informed and believes, and on that basis alleges, that the Regional Center performed the aforementioned actions to obtain an unfair benefit for its business.

80. By reason of the foregoing unlawful acts, Defendants have caused, and continue to cause, substantial and irreparable damage and injury to Plaintiff and the public. Defendants have benefitted from such unlawful conduct, and

will continue to carry out such unlawful conduct and to be unjustly enriched thereby unless enjoined by this Court.

**EIGHTH CLAIM**
**DELIVERY OF DEPOSIT**
**(UNDER CIVIL CODE § 3380)**
**Against All Defendants**

81.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 80, inclusive, of this Complaint as if fully set forth herein.

82.    A person in control of personal property of which is he is not the owner may be compelled specifically to deliver it to the person entitled to its immediate possession.

83.    Plaintiff deposited $500,000 into escrow, and those funds are in Emax's possession as the escrow holder.

84.    Emax is not the owner of those funds.  Plaintiff is entitled to immediate possession of those funds pursuant to the terms of the Subscription Agreement, since the I-526 petition was denied.

85.    Plaintiff seeks an order from the Court compelling Emax to deliver the $500,000 in escrow to Plaintiff.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for judgment against Defendants as follows:

***As to the First Claim for Fraud, Third Claim for Breach of Implied Covenant of Good Faith and Fair Dealing, and Fourth Claim for Conversion***

1.     A preliminary and permanent injunction enjoining and prohibiting Emax from disbursing the $500,000 in escrow to Americana One.

2.     Compensatory damages in the amount to be proven at trial, believed to be in excess of $500,000.

3.     Punitive and exemplary damages.

4.     Costs of suit.

5.     Pre- and post-judgment interest on any amounts awarded at the maximum legal rate as permitted by law and equity; and

6.     Any other or further relief that the Court deems appropriate, proper, and just.

***As to the Second Claim for Breach of Contract***

1.     A preliminary and permanent injunction enjoining and prohibiting Emax from disbursing the $500,000 in escrow to Americana One.

2.     Compensatory damages in the amount of $500,000.

3.     Costs of suit.

4.     Pre- and post-judgment interest on any amounts awarded at the maximum legal rate as permitted by law and equity; and

5. Any other or further relief that the Court deems appropriate, proper, and just.

**As to the Fifth Claim for Unauthorized Practice of Law**

1. Compensatory damages.

2. Restitution of all amounts paid.

3. Attorneys' fees.

4. Costs of suit.

5. Pre- and post-judgment interest on any amounts awarded at the maximum legal rate as permitted by law and equity; and

6. Any other or further relief that the Court deems appropriate, proper, and just.

**As to the Sixth Claim for Breach of Fiduciary Duty**

1. Compensatory damages.

2. Punitive Damages.

3. Costs of suit.

4. Pre- and post-judgment interest on any amounts awarded at the maximum legal rate as permitted by law and equity; and

5. Any other or further relief that the Court deems appropriate, proper, and just.

**As to the Seventh Claim for Unfair Competition**

1.  A preliminary and permanent injunction enjoining and prohibiting Emax from disbursing the $500,000 in escrow to Americana One.

2.  An Order for Defendants to return $500,000 to Plaintiff.

3.  Costs of suit.

4.  Pre- and post-judgment interest on any amounts awarded at the maximum legal rate as permitted by law and equity; and

5.  Any other or further relief that the Court deems appropriate, proper, and just.

***As to the Eighth Claim for Delivery of Deposit***

1.  An Order compelling Emax Escrow, Inc. to return the $500,000 held in escrow to Plaintiff.

DATED: December 10, 2015   Respectfully Submitted,
            THE LAW OFFICES OF MARY SUN

            /s/Jason Chuan
            Jason Chuan
            Mary M. Sun
            Attorneys for Plaintiff,
            Shoumin Zhang

# DEMAND FOR TRIAL BY JURY

Plaintiff Shoumin Zhang hereby demands a trial by jury on all issues raised in the Complaint.

DATED: December 10, 2015

Respectfully Submitted,
THE LAW OFFICES OF MARY SUN

/s/Jason Chuan
Jason Chuan
Mary M. Sun
Attorneys for Plaintiff,
Shoumin Zhang